**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NAVIGATORS INSURANCE COMPANY, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIV. A. NO. 2:20-cv-05430 |
| : | |
| : | |
| THE MIDDLE EAST FORUM, DANIEL : | |
| PIPES, GREGORY ROMAN, AND : | |
| MATTHEW BENNETT, : | |
| : | |
| Defendants. : | |
| : | |
| : | JURY TRIAL DEMANDED |
| THE MIDDLE EAST FORUM, DANIEL : | |
| PIPES, GREGG ROMAN, AND : | |
| MATTHEW BENNETT : | |
| : | |
| Third Party Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| FEDERAL INSURANCE COMPANY : | |
| : | |
| : | |
| Third Party Defendant. : | |

**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT, AND COMPLAINT
AGAINST THIRD PARTY DEFENDANT, FEDERAL INSURANCE COMPANY**

Defendants, The Middle East Forum, Daniel Pipes, Gregory Roman, and Matthew

Bennett ("Defendants"), by and through their counsel, Jay M. Levin, Esquire, and Madeline

Caprioli Hamilton, Esquire, of Offit Kurman, P.A., hereby file this Answer, Affirmative

Defenses, and Counterclaims in response to Plaintiff Navigators Insurance Company's

("Navigators") Complaint for Declaratory Judgment, and also, as Third Party Plaintiffs, file this

1

Complaint against Third Party Defendant, Federal Insurance Company, and in support thereof, alleges as follows:

## ANSWER

## STATEMENT OF THE CASE

1.      Admitted in part; denied in part. Defendants admit only that the Complaint filed by Navigators seeks a Declaratory Judgment that Navigators has no duty to provide insurance coverage under the policy it issued to its insured, The Middle East Forum ("MEF"), for various lawsuits. Defendants also admit that Navigators attached copies of the pleadings listed in Paragraph 1 of the Complaint identified as Exhibits A through M (herein collectively referred to as the "Underling Actions"). Defendants deny that Navigators is entitled to the Declaratory Judgment it seeks. To the contrary, Navigators is obligated to provide a defense and indemnity to Defendants for all of the Underlying Lawsuits under the policy it issued to MEF. Defendants deny any and all characterizations of the attachments referenced in Paragraph 1 of the Complaint as they are written documents which speak for themselves.

## PARTIES

2.      Admitted.

3.      Admitted in part; denied in part. Defendants admit that MEF was formed under the laws of the Commonwealth of Pennsylvania.  It is denied that MEF was formed under the laws of the State of Pennsylvania.

4.      Admitted.

5.      Admitted.

6.      Admitted upon information and belief.

2

## JURISDICTION AND VENUE

7.     Admitted.

8.     Admitted.

## FACTS

9.     Denied.  Defendants deny any and all characterizations of the Underlying Actions as any allegations related to those actions are set forth in written documents attached to Navigators' Complaint which speak for themselves.  Defendants further deny that any "workplace sex harassment, discrimination and/or retaliation" occurred involving any of the Defendants.

10.     Denied.  Defendants deny any and all characterizations of the Underlying Actions as any allegations related to those actions are set forth in written documents attached to Navigators' Complaint which speak for themselves.  Defendants further deny that Gregory Roman ("Roman") and/or Matthew Bennett ("Bennett") "engaged in a pattern and practice of sexual harassment, sexual assault, sexual misconduct, *quid pro quo* sexual harassment and sex discrimination against MEF's female employees."  Defendants further deny that "MEF failed to investigate the complaints and/or take action."

11.     Denied.  Defendants deny any and all characterizations of alleged letters and/or the Underlying Actions as any allegations related to those matters are set forth in written documents attached to Navigators' Complaint which speak for themselves.  Defendants further deny that any alleged "misconduct with any female employees" occurred involving any of the Defendants.

12.     Denied.  Defendants deny any and all characterizations of alleged letters, meetings and/or the Underlying Actions as any allegations related to those matters are set forth

in written documents attached to Navigators' Complaint which speak for themselves. Defendants further deny that any alleged misconduct with any female employees occurred involving any of the Defendants.  Defendants deny that "[Daniel] Pipes ("Pipes") allegedly failed to discipline Roman, change Roman's pay and rewarded Roman with remote work and less supervisory responsibility" and also deny that any of those actions were warranted.

13.     Denied.  Defendants deny any and all characterizations of the Underlying Actions as any allegations related to those actions are set forth in written documents attached to Navigators' Complaint which speak for themselves.  Defendants further deny that any alleged misconduct with any female employees occurred involving any of the Defendants.

14.     Admitted in part; denied in part.  Admitted only that, at one point in time, Tiffany Lee was employed at MEF. Defendants deny that Roman, in a supervisory capacity or in any other capacity, ever "sexually harassed, discriminated and/or retaliated against" Tiffany Lee.

15.     Denied. Defendants deny any and all characterizations of any alleged EEOC Charge of Discrimination by Tiffany Lee as any allegations related to that matter are set forth in a written document which speaks for itself.  Defendants further deny that Roman "subjected female employees to sexual harassment, sexual misconduct, sex discrimination, and retaliation." Defendants also deny that any alleged misconduct occurred involving any of the Defendants and Tiffany Lee or any other MEF employee.

16.     Admitted in part; denied in part. Admitted only that Tiffany Lee's allegations were reported to Chubb affiliate, Federal Insurance Company, at some point in 2017, as Federal Insurance Company was MEF's Employment Practices Liability insurer at the time.  Defendants deny that any alleged misconduct occurred involving any of the Defendants and Tiffany Lee or any other MEF employee.

17.     Admitted in part; denied in part.  Admitted only that MEF's broker reported alleged claims to Navigators.  Defendants deny any and all characterizations of the reports of those claims as they relate to written documents which speak for themselves. Defendants further deny that any alleged misconduct with any female employees occurred involving any of the Defendants.

18.     Admitted in part; denied in part.  Admitted only that Navigators issued a Not-For-Profit InNAVation Policy No. NY18DOLV03594NV to MEF for the policy period of December 23, 2018 to December 23, 2019 ("Navigators Policy"), and that the Navigators Policy provides Employment Practices Liability Coverage to MEF and other insureds. Defendants deny any and all characterizations of the Navigators Policy as that policy is a written document attached to Navigators' Complaint which speaks for itself. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth at length.

19.     Admitted in part; denied in part.  Admitted only that the cited provisions are found in the Navigators Policy. However, any inferences, claims, or allegations as to how such provisions are to be interpreted or applied to the coverage issues in this case are expressly denied.  Defendants also deny any and all characterizations of the Navigators Policy as that policy is a written document attached to Navigators' Complaint which speaks for itself. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

20.     Admitted. Defendants admit that they have demanded that Navigators defend and indemnify them under the Navigators Policy with respect to the Underlying Actions because the Navigators Policy provides coverage for all claims asserted in those lawsuits. Defendants

incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

21.     Denied as stated.  Defendants deny that Navigators "disclaims any obligation to defend or indemnify the MEF Defendants under the Policy with respect to the underlying Actions."  Navigators did not "disclaim" any obligation under the Navigators Policy to defend or indemnify until March 2020, when Navigators advised Defendants for the first time of its position that no coverage was provided under the policy for the Underlying Actions. Before that date, Navigators defended Defendants in the Underlying Actions for months. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

22.     Admitted.

## COUNT I

## No Claim First Made Within the Policy Period

23.     Paragraphs 1 - 22 are incorporated by reference.

24.     Denied. Defendants deny any and all characterizations of the Navigators Policy as that policy is a written document attached to Navigators' Complaint which speaks for itself. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

25.     Admitted in part; denied in part.  Admitted only that Tiffany Lee made a general allegation related to Roman and alleged harassment and/or discrimination prior to the Navigators Policy. Defendants deny any and all characterizations of any such allegations as they relate to an alleged EEOC Charge of Discrimination by Tiffany Lee and any allegations related to that matter are set forth in a written document which speaks for itself.  Defendants also deny that any such

alleged misconduct ever occurred involving any of the Defendants and Tiffany Lee or any other MEF employee.  Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

26.     Admitted in part; denied in part.  Admitted only that Tiffany Lee made a general allegation related to Roman and alleged harassment and/or discrimination prior to the Navigators Policy. Defendants deny any and all characterizations of such allegations as they relate to an alleged EEOC Charge of Discrimination by Tiffany Lee and any allegations related to that matter are set forth in a written document which speaks for itself.  Defendants also deny any allegations by Navigators as to what Defendants were "aware of".  Defendants also deny that any such alleged misconduct ever occurred involving any of the Defendants and Tiffany Lee or any other MEF employee.  Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

27.     Admitted in part; denied in part.  Admitted only that Tiffany Lee's allegations were reported to Chubb affiliate, Federal Insurance Company, at some point in 2017, as Federal Insurance Company was MEF's Employment Practices Liability insurer at the time.  Defendants deny that any alleged misconduct ever occurred involving any of the Defendants and Tiffany Lee or any other MEF employee. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

28.     Denied.

29.     Denied.

30.     Denied.

31.     Denied.

WHEREFORE, this Court should deny Navigators' request for a declaratory judgment finding that it owes no duty to defend or indemnify Defendants for the underlying actions, and find in Defendants' favor on that claim.

## COUNT II

### Prior Notice of Claim Exclusion Precludes Coverage

32.     Paragraphs 1 - 31 are incorporated by reference.

33.     Denied. The allegations in this paragraph are conclusions of law, and, thus, are denied in their entirety. Defendants also deny any and all characterizations of the Navigators Policy as that policy is a written document attached to Navigators' Complaint which speaks for itself. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

34.     Admitted in part; denied in part.  Admitted only that Tiffany Lee's allegations were reported to Chubb affiliate, Federal Insurance Company, at some point in 2017, as Federal Insurance Company was MEF's Employment Practices Liability insurer at the time. Defendants deny that any alleged misconduct ever occurred involving any of the Defendants and Tiffany Lee or any other MEF employee. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

35.     Denied.

36.     Denied.

WHEREFORE, this Court should deny Navigators' request for a declaratory judgment finding that it owes no duty to defend or indemnify Defendants for the underlying actions, and find in Defendants' favor on that claim.

## COUNT III

### The Tiffany Lee Claim Exclusion Precludes Coverage

37.     Paragraphs 1 - 36 are incorporated by reference.

38.     Denied. Any purported Tiffany Lee claim exclusion relates to an endorsement that was sent to MEF's broker after the policy was issued in an attempt by Navigators to unilaterally add it to the policy, and, therefore, it may not be valid.  Defendants further deny that any alleged exclusion applies to the Underlying Actions.

39.     Denied. Any purported Tiffany Lee claim exclusion relates to an endorsement that was sent to MEF's broker after the policy was issued in an attempt by Navigators to unilaterally add it to the policy, and, therefore, it may not be valid.  Defendants further deny that any alleged exclusion applies to the Underlying Actions.

40.     Denied. Any purported Tiffany Lee claim exclusion relates to an endorsement that was sent to MEF's broker after the policy was issued in an attempt by Navigators to unilaterally add it to the policy, and, therefore, it may not be valid.  Defendants further deny that any alleged exclusion applies to the Underlying Actions.

WHEREFORE, this Court should deny Navigators' request for a declaratory judgment finding that it owes no duty to defend or indemnify Defendants for the underlying actions based on the Tiffany Lee claim, and find in Defendants' favor on that claim.

## COUNT IV

### Known Loss/Loss in Progress Doctrine Precludes Coverage

41.     Paragraphs 1 – 40 are incorporated by reference.

42.     Denied. Defendants deny any and all characterizations of the underlying actions as any allegations related to those actions are set forth in written documents attached to

Navigators' Complaint which speak for themselves.  Defendants further deny that any alleged misconduct with any female employees occurred involving any of the Defendants.  Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

43.     Admitted in part; denied in part.  Admitted only that Tiffany Lee made a general allegation related to Roman and alleged harassment and/or discrimination at some point in time. Defendants deny any and all characterizations of any such allegations as they relate to an alleged EEOC Charge of Discrimination by Tiffany Lee and any allegations related to that matter are set forth in a written document which speaks for itself.  Defendants also deny any and all characterizations of MEF's insurance application as they relate to a written document which speaks for itself. Defendants further deny any allegations related to MEF's insurance application, purportedly attached to Navigator's Complaint as Exhibit O, because the application references attachments that are not included with Exhibit O. Defendants deny any allegations by Navigators as to what Defendants were "aware of".  Defendants also deny that any such alleged misconduct ever occurred involving any of the Defendants and Tiffany Lee or any other MEF employee. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

44.     Admitted in part; denied in part. Defendants admit only that a staff meeting may have occurred in or about November 2018.  Defendants deny any and all characterizations of an alleged letter as such allegations relate to a written document which speaks for itself.  Defendants further deny any and all characterizations of what occurred at any such alleged meeting as such allegations are set forth in written documents attached to Navigators' Complaint which speak for

themselves. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

     45.     Denied.

     46.     Denied.

     47.     Denied.

     48.     Denied.

WHEREFORE, this Court should deny Navigators' request for a declaratory judgment finding that it owes no duty to defend or indemnify Defendants for the underlying actions based on the known loss or loss in progress doctrine, and find in Defendants' favor on that claim.

## COUNT V

### Bodily Injury/Emotional Distress/Assault and Battery is Excluded

     49.     Paragraphs 1 - 48 are incorporated by reference.

     50.     Denied. The allegations in this paragraph are conclusions of law, and, thus, are denied in their entirety. Defendants also deny any and all characterizations of the Navigators Policy as that policy is a written document attached to Navigators' Complaint which speaks for itself.  Defendants further deny all allegations in this Paragraph of the Complaint because, to the extent such allegations relate to alleged deliberately fraudulent or criminal acts, the Navigators Policy requires such fraudulent or criminal acts to have been fully adjudicated before coverage can be denied, and such an adjudication has not occurred. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

     51.     Denied.  Defendants deny any and all characterizations of the Underlying Actions as any allegations related to those actions are set forth in written documents attached to

Navigators' Complaint which speak for themselves.  Defendants further deny that any alleged misconduct with any female employees occurred involving any of the Defendants. Defendants further deny all allegations in this Paragraph of the Complaint because, to the extent such allegations relate to alleged deliberately fraudulent or criminal acts, the Navigators Policy requires such fraudulent or criminal acts to have been fully adjudicated before coverage can be denied, and such an adjudication has not occurred. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

52.     Denied. The allegations in this paragraph are conclusions of law, and, thus, are denied in their entirety. Defendants also deny any and all characterizations of the Navigators Policy as that policy is a written document attached to Navigators' Complaint which speaks for itself. Defendants further deny all allegations in this Paragraph of the Complaint because, to the extent such allegations relate to alleged deliberately fraudulent or criminal acts, the Navigators Policy requires such fraudulent or criminal acts to have been fully adjudicated before coverage can be denied, and such an adjudication has not occurred. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

WHEREFORE, this Court should deny Navigators' request for a declaratory judgment finding that it owes no duty to defend or indemnify Defendants for the underlying actions, and find in Defendants' favor on that claim.

## **COUNT VI**

### **Privacy/Libel/Slander/Trespass Claims are Excluded**

53.     Paragraphs 1 - 52 are incorporated by reference.

54.     Denied. The allegations in this paragraph are conclusions of law, and, thus, are denied in their entirety. Defendants also deny any and all characterizations of the Navigators Policy as that policy is a written document attached to Navigators' Complaint which speaks for itself. Defendants further deny all allegations in this Paragraph of the Complaint because, to the extent such allegations relate to alleged deliberately fraudulent or criminal acts, the Navigators Policy requires such fraudulent or criminal acts to have been fully adjudicated before coverage can be denied, and such an adjudication has not occurred. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

55.     Denied. Defendants also deny any and all characterizations of the Navigators Policy as that policy is a written document attached to Navigators' Complaint which speaks for itself. Defendants further deny all allegations in this Paragraph of the Complaint because, to the extent such allegations relate to alleged deliberately fraudulent or criminal acts, the Navigators Policy requires such fraudulent or criminal acts to have been fully adjudicated before coverage can be denied, and such an adjudication has not occurred. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

56.     Denied.  Defendants deny any and all characterizations of the Underlying Actions as any allegations related to those actions are set forth in written documents attached to Navigators' Complaint which speak for themselves.  Defendants further deny that any alleged misconduct with any female employees occurred involving any of the Defendants. Defendants further deny all allegations in this Paragraph of the Complaint because, to the extent such allegations relate to alleged deliberately fraudulent or criminal acts, the Navigators Policy

requires such fraudulent or criminal acts to have been fully adjudicated before coverage can be denied, and such an adjudication has not occurred. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

57.     Denied.

WHEREFORE, this Court should deny Navigators' request for a declaratory judgment finding that it owes no duty to defend or indemnify Defendants for the underlying actions, and find in Defendants' favor on that claim.

## COUNT VII

### Criminal Acts are Excluded

58.     Paragraphs 1 - 57 are incorporated by reference.

59.     Denied. The allegations in this paragraph are conclusions of law, and, thus, are denied in their entirety. Defendants also deny any and all characterizations of the Navigators Policy as that policy is a written document attached to Navigators' Complaint which speaks for itself. Defendants further deny all allegations in this Paragraph of the Complaint because, to the extent such allegations relate to alleged deliberately fraudulent or criminal acts, the Navigators Policy requires such fraudulent or criminal acts to have been fully adjudicated before coverage can be denied, and such an adjudication has not occurred. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

60.     Denied.  Defendants deny any and all characterizations of the Underlying Actions as any allegations related to those actions are set forth in written documents attached to Navigators' Complaint which speak for themselves.  Defendants further deny that any alleged misconduct with any female employees occurred involving any of the Defendants.  Defendants

further deny all allegations in this Paragraph of the Complaint because, to the extent such allegations relate to alleged deliberately fraudulent or criminal acts, the Navigators Policy requires such fraudulent or criminal acts to have been fully adjudicated before coverage can be denied, and such an adjudication has not occurred. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

61.     Denied.

WHEREFORE, this Court should deny Navigators' request for a declaratory judgment finding that it owes no duty to defend or indemnify Defendants for the underlying actions, and find in Defendants' favor on that claim.

## COUNT VIII

### Pipes/Roman/Bennett Not Insured

62.     Paragraphs 1 - 61 are incorporated by reference.

63.     Denied. The allegations in this paragraph are conclusions of law, and, thus, are denied in their entirety. To the contrary, Navigators acknowledged in the reservation of rights letters that Pipes, Roman, and Bennett are insureds under the Navigators Policy. Bennett is an insured in any event under the Navigators Policy as the alleged acts pled in the Underlying Actions allegedly occurred when he was an MEF employee. Defendants incorporate by reference all allegations in their Affirmative Defenses and Counterclaims as though fully set forth in length.

WHEREFORE, this Court should deny Navigators' request for a declaratory judgment finding that it owes no duty to defend or indemnify Pipes, Roman, and Bennett for the underlying actions, and find in Defendants' favor on that claim.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a cause of action against Defendants upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Navigators issued Policy No. NY18DOLV03594NV, the Not-For-Profit InNAVation Policy, to the insured, The Middle East Forum, effective December 23, 2018, through December 23, 2019, as a claims-made and reported policy, which includes Employment Practice Liability coverage ("Navigators Policy"). That policy provides a $3,000,000 limit of liability for employment practices claims and a $3,000,000 aggregate limit. Each claim under the Employment Practice Liability Coverage Part is subject to a $5,000 retention. Under the claims-made policy, Navigators is required to provide a defense and indemnity for covered claims related to Employment Practices Liability that were made and reported to Navigators during the policy period. MEF reported the alleged workplace harassment and/or discrimination claims made by former MEF employees, Lisa Barbounis, Patricia McNulty, Catriona Brady, Delaney Yonchek, and Marnie O'Brien, as alleged in the Underlying Actions, to Navigators within the applicable policy period. Thus, the Navigators Policy provides coverage to Defendants for the Underlying Actions.

### THIRD AFFIRMATIVE DEFENSE

Navigators has a duty to defend Defendants under the Navigators Policy because the Underlying Actions include allegations that are covered, or at least potentially covered, under that policy.

16

### FOURTH AFFIRMATIVE DEFENSE

Navigators acknowledged in its March 3, 2020, coverage denial letter that "Pipes and Roman are Insureds Persons under the Policy." Navigators further acknowledged in its reservation of rights letters that Pipes, Roman, and Bennett are insured persons under the policy. Therefore, Navigators is estopped from claiming that Pipes, Roman, and Bennett are not insureds under the policy.

### FIFTH AFFIRMATIVE DEFENSE

Navigators has a duty to defend all Defendants in, at a minimum, the Underlying Actions for Lisa Barbounis and Marnie O'Brien, because neither Ms. Barbounis' most recent amended complaint nor Ms. O'Brien's complaints even reference Tiffany Lee.

### SIXTH AFFIRMATIVE DEFENSE

In July and August 2019, Navigators issued various reservation of rights letters accepting the defense of the Underlying Actions subject to a general reservation of rights. At that time, Navigators was fully aware of all facts and circumstances related to the alleged Tiffany Lee claim, but failed to assert that the acts alleged in the Underlying Actions were related or interrelated acts to, or related back to, the Lee claim as a basis for denial and further failed to reserve its rights to assert that alleged defense. Defendants reasonably relied on Navigators' decision to provide a defense in the Underlying Actions and paid defense costs for those cases, believing that Navigators would provide coverage for and pay those costs under the Navigators Policy. In further reliance on Navigators' providing a defense in the Underlying Actions, Defendants did not tender the cases to their prior insurer, Federal Insurance Company, which may negatively impact any available coverage under the Federal policy for pre-tender defense costs. Therefore, Navigators is estopped from claiming that the costs Defendants incurred related

17

to defending the Underlying Actions up to March 3, 2020, the date of the claim denial, are not covered under the Navigators Policy based on the alleged Tiffany Lee claim.

<u>**SEVENTH AFFIRMATIVE DEFENSE**</u>

Navigators cannot meet its burden of proving that the acts alleged in the Underlying Actions are excluded from coverage because those claims are allegedly "Related Wrongful Acts" to those involved in Tiffany Lee's claim. The claims and/or allegations in the Underlying Actions are materially different legally and factually in time, scope, and nature from the Tiffany Lee claim, and, thus, do not constitute "Related Wrongful Acts" under the Navigators Policy. The Underlying Actions do not relate back to the Tiffany Lee matter and are claims made within the Navigators Policy period. In addition, neither Ms. Barbounis' most recent amended complaint nor Ms. O'Brien's complaints even reference Tiffany Lee. Therefore, Navigators owes Defendants coverage for defense costs and indemnity for those cases.

<u>**EIGHTH AFFIRMATIVE DEFENSE**</u>

Navigators cannot meet its burden of proving that the acts alleged in the Underlying Actions are excluded from coverage because those claims resulted from a "Wrongful Act" or "Related Wrongful Act" which has been the subject of notice given under another Employment Practices Liability policy. The claims and/or allegations in the Underlying Actions are materially different legally and factually in time, scope, and nature from Tiffany Lee's claim and do not arise from or relate to any alleged "Wrongful Acts" and/or "Related Wrongful Acts" that were the subject of the Lee claim. In addition, neither Ms. Barbounis' most recent amended complaint nor Ms. O'Brien's complaints even reference Tiffany Lee. Therefore, Navigators owes Defendants coverage for defense costs and indemnity for those cases.

## NINTH AFFIRMATIVE DEFENSE

Navigators cannot meet its burden of proving that the Underlying Actions are excluded from coverage under Endorsement 12 in the Navigators Policy, claiming that those lawsuits allegedly relate to or result from the Tiffany Lee claim. The claims and/or allegations in the Underlying Actions are materially different legally and factually in time, scope, and nature from the Tiffany Lee claim, and, thus, do not relate to the Tiffany Lee matter.  In addition, neither Ms. Barbounis' most recent amended complaint nor Ms. O'Brien's complaints even reference Tiffany Lee. Further, Endorsement 12 was sent to MEF's broker after the policy was issued in an attempt by Navigators to unilaterally add it into the policy.  Defendants dispute that Endorsement 12 is valid and also dispute that it is part of the policy. Therefore, Navigators owes Defendants coverage for defense costs and indemnity for the Underlying Actions.

## TENTH AFFIRMATIVE DEFENSE

Navigators cannot meet its burden of proving that the Underlying Actions are excluded from coverage under the so-called "known loss" or "loss in progress" doctrine because the acts alleged in the Underlying Actions were not known to Defendants, do not constitute a loss in progress, and do not relate to any other alleged claim, including the Tiffany Lee matter. The Navigators Policy provides Employment Practices Liability coverage to Defendants for claims made and reported during the policy period. The Underlying Actions are claims made and reported during the Navigators Policy period, and, therefore, Navigators owes Defendants coverage for defense costs and indemnity for those cases.

## ELEVENTH AFFIRMATIVE DEFENSE

Even if the Underlying Actions assert claims for bodily injury, emotional distress, and/or assault and battery, which Defendants deny, Navigators must still provide a defense to

Defendants for those lawsuits because they include allegations that are covered, or at least potentially are covered, under the Navigators Policy.

## TWELFTH AFFIRMATIVE DEFENSE

Even if the Underlying Actions assert claims for privacy, libel and slander, and/or trespass, which Defendants deny, Navigators must still provide a defense to Defendants for those lawsuits because they include allegations that are covered, or at least potentially are covered, under the Navigators Policy.

## THIRTEENTH AFFIRMATIVE DEFENSE

Even if the Underlying Actions assert claims for criminal acts, which Defendants deny, Navigators must still provide a defense to Defendants for those lawsuits because they include allegations that are covered, or at least potentially are covered, under the Navigators Policy.

## FOURTEENTH AFFIRMATIVE DEFENSE

To the extent that, in their amended pleadings, plaintiffs in the Underlying Actions abandoned claims that Navigators contends are not covered, Navigators cannot rely on factual allegations in the past pleadings related to the abandoned claims as a basis for its coverage denial.

## FIFTEENTH AFFIRMATIVE DEFENSE

Navigators waived and/or is estopped from asserting any alleged defenses to coverage for defense costs in the Underlying Actions based on Navigators' initial acceptance of the defense for those cases.

## SIXTEENTH AFFIRMATIVE DEFENSE

Navigators waived and/or is estopped from asserting any alleged defenses to coverage for defense costs and/or indemnity for the Underlying Actions based on Navigators' bad faith failure

to fully and fairly assess the claim, failure to advise Defendants of an alleged defense that was fully known to Navigators at the time it issued reservation of rights letters for the claims, and failure to conduct a complete and objective claim investigation before issuing a coverage denial.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Navigators cannot meet its burden of proving that any exclusions in the Navigators Policy clearly and unambiguously preclude coverage for the Underlying Actions. Therefore, Navigators must immediately reimburse Defendants for all defense costs paid to date, pay all additional defense costs going forward, and indemnify Defendants for any amounts ultimately paid for the Underlying Actions by way of judgment or settlement.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

Navigators cannot meet its burden of proving that the Underlying Actions, which are materially different legally and factually in time, scope, and nature from the Tiffany Lee claim, relate back to, or relate in any way to, the Tiffany Lee matter to establish that coverage is precluded under the Navigators Policy.

**NINETEENTH AFFIRMATIVE DEFENSE**

On March 31, 2020, Navigators advised MEF that it would provide a defense for Marnie O'Brien's retaliation lawsuit against Defendants, one of the Underlying Actions, the Complaint for which is attached to Navigators' Complaint as Exhibit M.  Navigators must pay all costs related to the defense Defendants in the O'Brien retaliation lawsuit.  Navigators' acknowledgement that it owes a defense under the policy for Ms. O'Brien's retaliation lawsuit against Defendants thereby waives any claim by Navigators that it does not owe a defense for retaliation claims brought by other plaintiffs in the Underlying Actions. Therefore, Navigators

21

must pay all defense costs associated with the defense of any retaliation claims brought by plaintiffs in the Underlying Actions.

## TWENTIETH AFFIRMATIVE DEFENSE

An insurer has a duty to defend if the complaint includes allegations that are covered, or at least potentially are covered, under an insurance policy. Because Navigators has acknowledged that it must defend retaliation claims under the policy, then the Underlying Actions plead covered claims, and, therefore, it must provide a defense to Defendants for all claims alleged in the Underlying Actions.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

To the extent that Navigators attempts to disclaim coverage for any alleged deliberately fraudulent or criminal acts, the Navigators Policy requires such fraudulent or criminal acts to have been fully adjudicated before coverage can be denied. Such an adjudication has not occurred here, and, thus, Navigators cannot deny coverage for such claims.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Endorsement No. 12, which Navigators contends applies to preclude coverage for claims related to the Tiffany Lee matter, was sent to MEF's broker after the Navigators Policy was issued in an attempt by Navigators to unilaterally add it to the policy. Therefore, Defendants dispute that the endorsement is valid and also dispute that it is part of the policy.

## COUNTERCLAIMS

Defendants, The Middle East Forum, Daniel Pipes, Gregg Roman, and Matthew Bennett ("Defendants"), hereby file these Counterclaims against Plaintiff and Counterclaim Defendant, Navigators Insurance Company ("Navigators"), and in support thereof, alleges as follows:

**THE PARTIES**

1.      Upon information and belief, Navigators is an insurance company formed under the laws of the State of New York with its principal place of business located in the State of Connecticut.

2.      The Middle East Forum ("MEF") is a non-profit corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business located in Philadelphia, Pennsylvania.

3.      MEF conducts business in Pennsylvania and within the geographical boundaries of the Eastern District of Pennsylvania.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000 exclusive of costs and interest, and the parties are citizens of different states.

5.      Venue is proper in the Eastern District pursuant to 28 U.S.C. §1391 as the case concerns a dispute that arose in this district and MEF's principal place of business is within, and MEF conducts business in, this district.

**FACTUAL BACKGROUND**

6.      MEF is a Philadelphia based non-profit think tank, founded in 1994 by Daniel Pipes ("Pipes"), which promotes American interests in the Middle East and protects Western values from Middle Eastern threats. Pipes serves as MEF's President.

7.      Gregg Roman ("Roman") functions as MEF's Chief Operations Officer, responsible for day-to-day management, communications, and financial resource development.

8.      Five former, female MEF employees (Lisa Barbounis, Patricia McNulty, Catriona Brady, Delaney Yonchek, and Marnie O'Brien) filed various EEOC claims and lawsuits against MEF, Pipes, and Roman, from June 2019 through early 2020, alleging various causes of action for gender discrimination, hostile work environment, disparate treatment, employment retaliation, assault and battery, and negligent hiring, supervision and retention. Some of the claims and lawsuits also included Matthew Bennett, a former MEF employee, as a defendant.

9.      The lawsuits are primarily based on Roman's alleged conduct that occurred in late 2017, 2018, and into 2019. For ease of reference, Defendants refer to Exhibits A through M of Plaintiff's Complaint which are the Complaints filed by the former MEF employees (together with the related EEOC claims, collectively referred to as the "Underlying Actions").

10.      MEF tendered the lawsuits to its insurer, Navigators, seeking a defense and indemnity for all Defendants under the Employment Practices Liability Coverage Part of MEF's claims-made policy.

11.      Navigators issued Policy No. NY18DOLV03594NV, the Not-For-Profit InNAVation Policy ("Navigators Policy"), to the insured, The Middle East Forum, effective December 23, 2018, through December 23, 2019, as a claims-made and reported policy, which includes Employment Practice Liability coverage.  (The Navigators Policy is attached as Exhibit A).[1]

12.      The Navigators Policy provides a $3,000,000 limit of liability for employment practices claims and a $3,000,000 aggregate limit. Each claim under the Employment Practice

---

[1] Exhibit A represents the complete policy sent to MEF when it was issued. Therefore, it does not include Endorsements 11 and 12 which Navigators contends involve a policy exclusion for alleged claims related to Tiffany Lee.  These endorsements were sent to MEF's broker after the policy was issued in an attempt by Navigators to unilaterally add them to the policy. Defendants dispute the validity of the endorsements and further dispute that the endorsements are part of the policy.

Liability Coverage Part is subject to a $5,000 retention. Under the claims-made policy, Navigators is required to provide defense and indemnity for covered "Claims" made and reported to Navigators during the policy period. (*Id*.)

13.     The Navigators Policy states:

**GENERAL TERMS AND CONDITIONS**
**THIS IS A CLAIMS-MADE AND REPORTED POLICY**
**WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY**

**PLEASE READ THE ENTIRE POLICY CAREFULLY**

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the insurance company shown in the Declarations (the "Insurer"), including the statements made in the **Proposal Form**, and subject to all terms, conditions and limitations of this Policy, the **Insureds** and the Insurer agree:

**Section I. Defense Obligations**

> **A.**     The Insurer will have the right and duty to defend any **Claim** against any **Insured** covered under this Policy, even if the allegations in such **Claim** are groundless, false or fraudulent. The Insurer will give consideration to the **Insureds'** preferences for defense counsel, but the final decision regarding the appointment of defense counsel will rest with the Insurer. The **Insureds** will have the right, at their own expense, to associate with the Insurer in the defense of any **Claim** and the negotiation of any settlement thereof.

> **B.**     **Costs of Defense** will be part of, and not in addition to, all applicable Limits of Liability set forth in ITEM 4 of the Declarations, and the Insurer's payment of **Costs of Defense** will reduce, and may exhaust. Such Limit of Limits of Liability.

(*Id*., Form NAV-NPGT-001 (6/10)).

14.     The Navigators Policy's insuring agreement in the Employment Practices

Coverage Part provides:

**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART**

**THIS IS A CLAIMS-MADE AND REPORTED POLICY**
**WITH COSTS OF DEFENSE INCLUDED IN THE LIMIT OF LIABILITY**

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the insurance company shown in the Declarations (the "Insurer"), including the statements made in the **Proposal Form**, and subject to all terms, conditions and limitations of this Policy, the **Insureds** and the Insurer agree:

**Section I. Insuring Agreement**

Provided that a **Claim** is first made against an **Insured** during the **Policy Period** or the **Discovery Period**, if purchased, and further that such **Claim** is reported to the Insurer in accordance with Section VII. Notice of the GENERAL TERMS AND CONDITIONS, the Insurer will pay to or on behalf of the **Insureds** all **Loss** which the **Insureds** are legally obligated to pay as a result of the **Claim** first made against the **Insureds** during the **Policy Period** or the **Discovery Period**, if purchased, for a **Wrongful Act** made by an **Insured** in his, her or its capacity as such.

(*Id.,* Form NAV-NPEP-001 (6/10)).

15.     In relevant part, the Navigators Policy's Employment Practices Liability

Coverage Part's definition of a "Claim" and a "Wrongful Act" states:

**Section II. Definitions**

A.     For purposes of the Coverage Part, the term "**Claim**" will mean:

1.     any of the following:

a.     a written demand for monetary or injunctive relief or a written demand for reinstatement, re-employment or re-engagement;

26

      b.      a civil proceeding commenced by the service of a complaint, summons, notice of application, writ, claim form or similar pleading in any jurisdiction in the world;

                 \*     \*     \*

      e.      a formal administrative or regulatory proceeding by or before the Equal Employment Opportunity Commission or any other similar government agency located anywhere in the world with jurisdiction over the **Company's** employment practices, which is commenced by the issuance of the notice of charges, formal investigative order or similar document and an audit conducted by the Office of Federal Contract Compliance Programs which is commenced by the issuance of a notice of violation, order to show cause or written demand for monetary or injunctive relief.

which is brought and maintained by or on behalf of any past, present or prospective **Employee** against any **Insured** for any **Wrongful Act**…

                 \*     \*     \*

H.      For purposes of this Coverage Part, the term "**Wrongful Act**" will mean:

      1.      any actual or alleged:

            a.  wrongful dismissal, discharge or termination (whether actual, constructive or retaliatory) of employment, wrongful failure or refusal to hire or promote, wrongful discipline or demotion, wrongful deprivation of career opportunity, negligent employment evaluation, employment

related misrepresentation, or failure to grant tenure;

b. sexual or other workplace harassment, including quid pro quo and hostile work environment;

c. unlawful employment discrimination, including discrimination based on a person's age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, pregnancy, disability, HIV or other health status, Vietnam Era veteran or other military status, or other protected status or characteristic under federal, state, or local law, including but not limited to:

- Title VII of the Civil Rights Act of 1964;
- The Equal Pay Act of 1963;
- The Age Discrimination Act of 1967;

\* \* \*

d. employment-related invasion of privacy, defamation (including libel and slander) or negligent or intentional infliction of emotional distress;
e. failure of the **Company** to create, provide for or enforce adequate or consistent employment-related policies; …

\* \* \*

*(Id.).*[2]

16.     The Navigators Policy provides, in relevant part, that as a condition precedent to their rights under the policy in connection with any claim, "… the **Insureds** must give the

---

[2] Section II. Definitions in the Navigators Policy states that, for "Claim" and "Wrongful Act," each will have, with respect to the coverage afforded in each, the meaning given to that term in such Coverage Part [*i.e.*, the Employment Practices Liability Coverage Form]. *Id.*

insurer written notice of such **Claim** as soon as practicable after such **Claim** is made, but in no event later than sixty (60) days after the end of the **Policy Period** …". (*Id*., Form NAV-NPGT-001 (6/10)).

17.     Each of the Underlying Actions constitutes a "Claim" under the Employment Practices Coverage Part of the Navigators Policy, as the lawsuits are civil proceedings brought by present or past employees against the insureds, MEF, Roman, Pipes, and Bennett for an alleged "Wrongful Act," which includes alleged wrongful discharge, retaliation, sexual or other alleged workplace harassment, hostile work environment, Title VII claims, and the alleged failure of MEF, the insured, to provide for or enforce employment-related policies.

18.     MEF gave proper notice of the "Claims", *i.e.*, the Underlying Actions and their precursor EEOC Complaints, to Navigators immediately after MEF had notice of such claims and within the policy period.

19.     In the March 3, 2020 denial letter, Navigators acknowledged that Roman and Pipes are insureds under the Navigators Policy.  In the reservation of rights letters, Navigators acknowledged that Pipes, Roman, and Bennett are insured persons under the policy.

20.     No exclusions or limitations in the Navigators Policy apply to preclude coverage for the Underlying Actions, including the exclusions, limitations, or endorsements, or common law defenses, that Navigators alleged in its Complaint, coverage denial letters, and/or otherwise asserted under the policy or at law.  This includes, but is not limited to, Navigators' erroneous claim that the acts alleged in the Underlying Actions are not covered claims under the Navigators Policy because they are related acts to, or relate back to, the Tiffany Lee claim.

21.     Navigators cannot rely on any endorsements to the policy referencing Tiffany Lee, including Endorsement 12, because that endorsement was sent to MEF's broker after the

policy was issued in an attempt by Navigators to unilaterally add it to the policy.  Defendants dispute that the endorsement is valid and also dispute that it is part of the policy.

22.    Neither Ms. Barbounis' most recent amended complaint nor Ms. O'Brien's complaints even reference Tiffany Lee or any allegations about Tiffany Lee's alleged claim, and, thus, Navigators cannot claim that those matters relate to or relate back to the alleged Tiffany Lee matter. Thus, Navigators has a duty to defend Defendants in those actions.

23.    Navigators must defend and indemnify Defendants for all of the Underlying Actions as they satisfy all requirements under the policy for covered employment related practices claims.

24.    Navigators owes Defendants a defense in the Underlying Actions because, while plaintiffs in those lawsuits include various alleged workplace misconduct claims, the Navigators Policy specifically covers employment practices related claims, the exact type of coverage for which MEF paid a premium and which MEF obtained from Navigators.

25.    In fact, on March 31, 2020, Navigators advised MEF that it would provide a defense for Marnie O'Brien's retaliation lawsuit against Defendants, one of the Underlying Actions, the Complaint for which is attached to Navigators' Complaint as Exhibit M. (Navigator's March 31, 2019 letter is attached as Exhibit B).[3] Navigators, therefore, must pay all costs related to the defense Defendants in the O'Brien retaliation lawsuit.

26.    Navigators' acknowledgement that it owes a defense under the policy for Ms. O'Brien's retaliation lawsuit against Defendants both disproves and waives any claim that Navigators does not owe a defense for retaliation claims brought by other plaintiffs in the

---

[3] The letter is dated March 31, 2019, but it was received by MEF in early April 2020. Thus, the letter incorrectly notes the year as 2019.

Underlying Actions. Therefore, it cannot be disputed that, at a minimum, Navigators has agreed to cover, and must pay all defense costs associated with, the defense of any retaliation claims brought by plaintiffs in the Underlying Actions.

27.     Navigators, however, must provide a defense if any claims in the Underlying Actions are covered, or may be covered, under the policy. Given that Navigators agrees that it must provide a defense for retaliation claims, Navigators must defend Defendants in the Underlying Actions in their entirety.

28.     Navigators must defend the Underlying Actions filed by Ms. Barbounis and Ms. O'Brien because the allegations in those complaints, which are what determine Navigators' duty to defend, do not include any reference to or averments about Tiffany Lee.

29.     In fact, Navigators acknowledged its duty to defend.  Navigators accepted the defense of the Underlying Actions without advising Defendants of any potential coverage defenses, even those defenses known to Navigators when it agreed to defend, which Navigators later attempted to use a basis to avoid its duty to defend and indemnify.

30.     From July through August, 2019, Navigators sent MEF a reservation of rights letter for each of plaintiffs' EEOC complaints, which formed the basis for the Underlying Actions, after MEF submitted those claims to Navigators. In those letters, Navigators agreed to provide a defense subject only to a general reservation of "rights and defenses under the Policy and available at law with respect to this matter." No specific policy defenses or other defenses available at law were identified.  (Navigators' reservation of rights letters, all dated July or August 2019, are attached as Exhibit C - McNulty, Exhibit D - Barbounis, Exhibit E - Yonchek, Exhibit F - Brady, and Exhibit G - O'Brien).

31.     Each of those virtually identical letters state that "Navigators has the duty to defend all Claims made under this Policy." (*Id*.)

32.     In each of those virtually identical letters, Navigators also acknowledged the details of the defense being provided to Defendants: (a) Navigators stated the available coverage under the Navigators Policy; (b) Navigators accepted that the claims fell under the Employment Practices Liability Coverage Part of the policy (as opposed to the Directors and Officers Liability Coverage Part); (c) Navigators consented to the retention of Cozen O'Connor as defense counsel; (d) Navigators identified defense counsel's rate caps for partners, associates, and paralegals; and (e) Navigators required quarterly defense costs invoices which follow Navigators' Litigation Management Program Guidelines.  (*Id*.)

33.     Furthermore, in the reservation of rights letters, Navigators stated that Defendants must keep Navigators informed of all material developments in each matter, including sending copies of pleadings, briefs, or rulings, prior notice of any settlement discussions, offers, or mediations, and prior notice of any calls or meetings with any insurer. (*Id*.)

34.     From July 2019 through early March 2020, because Navigators agreed to fulfill its duty to defend the Underlying Actions, both MEF representatives and defense counsel with Cozen O'Connor communicated with Navigators about the initial alleged EEOC Complaints and Underlying Actions that the former MEF employees filed against Defendants, kept Navigators up-to-date on developments in those matters, and discussed case strategy with Navigators as the Underlying Actions moved forward.

35.     Although Defendants dispute all allegations related to the Tiffany Lee claim, the alleged Lee matter arose in 2016, and was disclosed to Navigators as part of the underwriting process for Navigator Policy No. NY18DOLV03594NV, effective December 23, 2018, through

December 23, 2019, under which Defendants presently seek coverage, and for the policy that Navigators issued to MEF for the prior policy period of December 23, 2017 to December 23, 2018.

36.     Therefore, Navigators had full knowledge of the existence of Tiffany Lee's claim no later than December 2017, when it issued its first policy to MEF.

37.     Navigators had full knowledge of the existence of, and all information relevant to, the Tiffany Lee claim when it issued its reservation of rights letters to MEF in July and August, 2019, which, in part, are meant to put an insured on notice of any potential coverage defenses known to the insurer at the time. Navigators failed to deny coverage for the Underlying Actions, or even reserve rights, based on the Lee claim at that time.

38.     Instead, Navigators defended the Underlying Actions for months and lulled Defendants into believing that the acts alleged in the Underlying Actions were covered, such that MEF incurred defense costs with the reasonable expectation of being reimbursed by Navigators for those amounts.

39.     Given the express acknowledgement in the reservation of rights letters that "Navigators has the duty to defend all Claims made under this Policy", even Navigators recognized that the allegations in the Underlying Actions fall within, or at least potentially fall within, the scope of the coverage provided by the Employment Practice Liability Coverage Part, which requires Navigators to defend Defendants in the Underlying Actions.

40.     Despite its acknowledgement that it would defend the Underlying Actions, which included, without limitation, retaliation claims, Navigators has not paid MEF any amounts for defense costs rightfully due and owing under the Navigators Policy.  For months, Defendants

reasonably believed that Navigators was providing a defense in the Underlying Actions and reasonably expected that Navigators would reimburse MEF for all defense costs.

41.     However, on March 3, 2020, Navigators denied coverage for the Underlying Actions primarily based on its claim that the acts alleged in the Underlying Actions are related or interrelated acts to, or relate back to, Tiffany Lee's claim. (Navigators' March 3, 2020 denial letter is attached as Exhibit H). This was the first time that Navigators raised the Tiffany Lee claim as a basis to deny coverage, which was months after Navigators agreed to defend the Underlying Actions.

42.     The acts alleged in the Underlying Actions are materially different legally and factually in time, scope, and nature from the Tiffany Lee claim, and do not relate back or relate in any way to the Tiffany Lee matter to preclude coverage under the Navigators Policy. Therefore, the Navigators Policy provides coverage for the Underlying Actions.

43.     Based on Navigators' acceptance of the defense for the Underlying Actions, Defendants did not tender the claims to Federal Insurance Company ("Federal"), its insurer for the policy period of December 23, 2016 to December 23, 2017, during which the Tiffany Lee claim was made and reported. Although MEF reported the Lee claim to Federal back in 2017, Lee dropped her claim and nothing further ever occurred.

44.     Defendants did not tender the Underlying Actions to Federal until July 2020, after repeatedly advising Navigators why its coverage denial was wrong and requesting that Navigators withdraw its coverage denial, which Navigators refused to do.

45.     As discussed more fully in Defendants/Third Party Plaintiffs' Complaint against Federal, if the acts alleged in the Underlying Actions are related or interrelated acts to, or relate back to, Tiffany Lee's claim, then Federal must provide coverage; if the acts alleged in the

34

Underlying Actions do not relate back to Tiffany Lee's claim, then Navigators must provide coverage.

46.     MEF had no gap in its Employment Practices Liability coverage from 2016 to 2020, and, thus, either Federal or Navigators must defend and indemnify MEF for the Underlying Actions.

47.     MEF has paid and/or incurred in excess of $1 million in attorneys' fees to date to defend Defendants in the Underlying Actions.

## COUNT I – BREACH OF INSURANCE CONTRACT

48.     Paragraphs 1 - 47 of the Counterclaims, the Answer to the Complaint, and the Affirmative Defenses are incorporated by reference.

49.     MEF and Navigators entered into a valid claims-made insurance contract which was in full force and effect at the time that Defendants provided notice of the claims related to the Underlying Actions to Navigators, and which provided Employment Practice Liability Coverage and insured Pipes, Roman, and Bennett.  (*See* Ex. A).

50.      Each of the Underlying Actions constitutes a "Claim" under the Employment Practices Coverage Part of the Navigators Policy, as the lawsuits are civil proceedings brought by present or past employees against the insureds, MEF, Roman, Pipes, and Bennett for a "Wrongful Act," which includes alleged wrongful discharge, retaliation, sexual or other alleged workplace harassment, hostile work environment, Title VII claims, and the alleged failure of MEF, the insured, to provide for or enforce employment-related policies.

51.     No exclusions or limitations in the Navigators Policy preclude coverage for the Underlying Actions, including policy exclusions, limitations, or endorsements, or common law defenses, that Navigators alleged in its Complaint, coverage denial letter, and/or otherwise

asserted under the policy or at law. This includes purported Endorsement 12 because Navigators sent that endorsement to MEF's broker after the policy was issued in an attempt by Navigators to unilaterally add it to the policy, and, therefore, Defendants dispute that the endorsement is valid and also dispute that it is part of the policy.

52.     Navigators accepted the defense of the Underlying Actions, including, without limitation, retaliation claims, but refuses to pay MEF defense costs incurred.

53.     Navigators refuses to defend the Underlying Actions for Ms. Barbounis' most recent amended complaint and Ms. O'Brien's two complaints even though their complaints do not even reference Tiffany Lee or any allegations related to Tiffany Lee, which establishes that Navigators has a duty to defend those actions.

54.     All conditions precedent to coverage have been fulfilled.

55.     Navigators breached the insurance contract, including its duty to defend, when it denied coverage for the acts and claims alleged in the Underlying Actions on March 3, 2020.

56.     As a direct and proximate result of Navigators' breach of the insurance contract, Defendants have sustained and will continue to sustain damages in defense costs that they have had to pay and will continue pay to defend all Defendants, and for any amounts Defendants pay by way of settlements or judgments, in the Underlying Actions.

WHEREFORE, Defendants respectfully request that this Court enter judgment in their favor and against Navigators in an amount in excess of $150,000 for all compensatory damages, consequential damages, interest, attorneys' fees, costs, and any further relief this Court deems just, equitable, and proper.

## COUNT II – ESTOPPEL

57.     Paragraphs 1 - 56 of the Counterclaims, the Answer to the Complaint, and the Affirmative Defenses are incorporated by reference.

58.     Each of the Underlying Actions constitutes a "Claim" under the Employment Practices Coverage Part of the Navigators Policy, as the lawsuits are civil proceedings brought by present or past employees against the insureds, MEF, Roman, Pipes, and Bennett for a "Wrongful Act," which includes alleged wrongful discharge, retaliation, sexual or other alleged workplace harassment, hostile work environment, Title VII claims, and the alleged failure of MEF, the insured, to provide for or enforce employment-related policies.

59.     No exclusions or limitations in the Navigators Policy preclude coverage for the Underlying Actions, including policy exclusions, limitations, or endorsements, or common law defenses, that Navigators alleged in its Complaint, in the coverage denial letters, and/or otherwise asserted under the Navigators Policy or at law.

60.     In fact, Navigators acknowledged that it is obligated to defend Marnie O'Brien's retaliation claim against Defendants, and, thus, Navigators must defend all retaliation claims brought by plaintiffs in the Underlying Actions. (*See* Ex. B).  In addition, if even one claim is potentially covered under the Navigators Policy, which Navigators acknowledged by agreeing to defend retaliation claims, then Navigators must provide a defense for the Underlying Actions in their entirety.

61.     At the time Navigators issued the reservation of rights letters to Defendants agreeing to defend the Underlying Actions, Navigators had full knowledge of Tiffany Lee's claim, and that the claim had previously been submitted to MEF's prior insurer, Federal.

62.     In its reservation of rights letters, Navigators advised Defendants that "Navigators has the duty to defend all Claims made under this Policy", accepted that the claims fell under the Employment Practices Liability Coverage Part of the policy, and consented to the retention of Cozen O'Connor as defense counsel, thereby lulling Defendants into believing that Navigators was providing coverage and did not view the Tiffany Lee claim as a basis to deny coverage. (*See* Ex. C through G).

63.     Furthermore, in reasonable reliance on Navigators providing a defense, from July 2019 through early March 2020, both MEF representatives and defense counsel with Cozen O'Connor communicated with Navigators about the initial alleged EEOC Complaints and Underlying Actions that the former MEF employees filed against Defendants, kept Navigators up-to-date on developments in those matters, and discussed case strategy with Navigators as the Underlying Actions moved forward.  During this time, Navigators never advised Defendants of a potential coverage defense related to the alleged Tiffany Lee matter.

64.     In fact, Navigators did not deny coverage for the Underlying Actions until March 3, 2020, months after the issuance of its reservation of rights letters accepting the defense.  (*See* Ex. H).

65.     Although Defendants dispute Navigators' allegations related to Tiffany Lee's claim, the Lee claim arose in 2016, and was disclosed to Navigators as part of the underwriting process for Navigator Policy No. NY18DOLV03594NV, effective December 23, 2018, through December 23, 2019, under which Defendants presently seek coverage, and for the policy that Navigators issued to MEF for the prior policy period of December 23, 2017 to December 23, 2018.

66.     Therefore, Navigators had full knowledge of the existence of the Tiffany Lee claim in December 2017, when it issued its first policy to MEF, and when it sent Defendants the reservation of rights letters.

67.     Navigators defended the Underlying Actions for months without even raising the Tiffany Lee claim, lulling Defendants into believing that the acts alleged in the Underlying Actions were covered, such that MEF paid all defense costs thus far with the expectation of being reimbursed by Navigators for those amounts.

68.     Further, Defendants reasonably relied to their detriment on Navigators' decision to provide a defense for the Underlying Actions and not to use the Tiffany Lee claim as a basis to deny coverage, and, thus, did not notify its prior insurer, Federal, of the Underlying Actions or seek coverage from Federal for those lawsuits when they were first filed.

69.     As a result, because Defendants believed that Navigators accepted the defense and reasonably relied on that acceptance, Defendants did not provide Federal with notice of the Underlying Actions until July 2020.  Federal denied coverage on October 12, 2020.  (Federal's October 12, 2020 denial letter is attached as Exhibit I).

70.     Even if Federal's policy ultimately is found to provide coverage for the Underlying Actions, however, Federal will most certainly take the position that pre-tender defense costs are not covered under its policy, and that the only defense costs covered are those incurred after July 2020, when Defendants tendered the Underlying Actions to Federal. Therefore, as a result of Navigators' initial acceptance of the defense and then later claim denial, Defendants will suffer a significant loss because Federal will not pay defense costs incurred up to July 2020, leaving hundreds of thousands of dollars in defense costs unpaid.

71.     While Defendants dispute that Navigators has any basis to deny coverage under the Navigators Policy based on the Tiffany Lee claim or any other basis to deny coverage, Defendants reasonably relied to their detriment on Navigators' position not to deny coverage based on Tiffany Lee's claim and instead to provide a defense.

72.     All conditions precedent to coverage, including the duty to defend, have been fulfilled.

73.     Navigators is estopped from refusing to provide a defense to Defendants for the acts and claims alleged in the Underlying Actions, and owes a duty to defend Defendants in those lawsuits, and all costs associated therewith, at a minimum up to the claim denial on March 6, 2020.

WHEREFORE, Defendants respectfully request that this Court enter judgment in their favor and against Navigators in an amount in excess of $150,000 for all compensatory damages, consequential damages, interest, attorneys' fees, costs, and any further relief this Court deems just, equitable, and proper.

## COUNT III – BAD FAITH UNDER 42 PA. C.S. §8371

74.     Paragraphs 1 - 73 of the Counterclaims, the Answer to the Complaint, and the Affirmative Defenses are incorporated by reference.

75.     Each of the Underlying Actions constitutes a "Claim" under the Employment Practices Coverage Part of the Navigators Policy, as the lawsuits are civil proceedings brought by present or past employees against the insureds, MEF, Roman, Pipes, and Bennett for a "Wrongful Act," which includes alleged wrongful discharge, retaliation, sexual or other alleged workplace harassment, hostile work environment, Title VII claims, and the alleged failure of MEF, the insured, to provide for or enforce employment-related policies.

76.     No exclusions or limitations in the Navigators Policy preclude coverage for the Underlying Actions, including policy exclusions, limitations, or endorsements, or common law defenses, that Navigators alleged in its Complaint, in the coverage denial letters, and/or otherwise asserted under the policy or at law. This includes purported Endorsement 12 because Navigators sent that endorsement to MEF's broker after the policy was issued in an attempt to unilaterally add it to the policy, and, therefore, Defendants dispute that the endorsement is valid and also dispute that it is part of the policy.

77.     At the time Navigators issued the reservation of rights letters to Defendants providing a defense for the Underlying Actions, Navigators had full knowledge of Tiffany Lee's claim, and that the claim had previously been submitted to MEF's prior insurer, Federal.

78.     In its reservation of rights letters, however, Navigators advised Defendants that it was providing a defense for the Underlying Actions and consented to the appointment of Cozen O'Connor as defense counsel, thereby lulling Defendants into believing that Navigators did not view the Tiffany Lee claim as a basis to deny coverage.  (*See* Ex. C through G).

79.     Navigators purported to provide a defense to Defendants for many months, despite having full knowledge of Tiffany Lee's claim and the ability to evaluate whether coverage under the Navigators Policy would be precluded by the Lee claim.

80.     Navigators failed to conduct a reasonable investigation and/or coverage analysis to determine whether the Tiffany Lee claim might preclude coverage under the Navigators Policy for the acts and claims alleged in the Underlying Actions, which it could and should  have done because it had all of the necessary information about the Tiffany Lee claim to conduct a reasonable analysis at the time Navigators issued its reservation of rights letters.

81.     Navigators owes Defendants a good faith obligation to fully and fairly asses the claim, to conduct a complete investigation and coverage analysis before making any coverage determinations, and to fully and accurately advise Defendants of the status of its investigation, its position in reservation of rights letters and/or claim communications, and the potential of an applicable policy defense that Navigators knew of, or should have known of, at the time Defendants first submitted the claims to Navigators.

82.     While Defendants dispute that Navigators has any basis to deny coverage under the Navigators Policy related to Tiffany Lee's claim or any other basis to deny coverage, Defendants reasonably relied on Navigators' decision not to deny coverage based on the Tiffany Lee claim and instead to provide a defense based on Navigators' bad faith failure to fully inform Defendants of a potential basis for denial.

83.     Navigators kept Defendants in the dark for months about the potential of an applicable policy defense of which Navigators knew, or should have known, at the time Defendants first submitted the claims to Navigators.

84.     Navigators purported to defend the Underlying Actions for months without even raising the Tiffany Lee claim, lulling Defendants into believing that the acts alleged in the Underlying Actions were covered, such that MEF paid all defense costs thus far with the expectation of being reimbursed by Navigators for those amounts.

85.     Defendants reasonably relied to their detriment on Navigators' decision to defend the Underlying Actions and not to use the Tiffany Lee claim as a basis to deny coverage, and, thus, did not notify its prior insurer, Federal, of the Underlying Actions or seek coverage from Federal for those lawsuits when they were first filed.

86.     As a result, because Defendants believed that Navigators accepted the defense and reasonably relied on that acceptance, Defendants did not provide Federal with notice of the Underlying Actions until July 2020.  Federal denied coverage on October 12, 2020.  (*See* Ex. I).

87.     Even if Federal's policy ultimately is found to provide coverage for the Underlying Actions, however, Federal will most certainly take the position that pre-tender defense costs are not covered under its policy and that the only defense costs covered are those incurred after July 2020. Therefore, as a result of Navigators' initial acceptance of coverage and then later claim denial, Defendants will have hundreds of thousands of unpaid defense costs incurred up to July 2020.

88.     Furthermore, Navigators has taken inconsistent and unsupported positions with respect to coverage under the policy without explanation.

89.     Although Navigators denied coverage for the Underlying Actions on March 3, 2020 (after initially agreeing to defend), which included retaliation claims, Navigators then advised MEF on March 31, 2020 that it would provide a defense to Defendants for Marnie O'Brien's retaliation suit, one of the Underlying Actions, the Complaint for which is attached to Navigators' Complaint as Exhibit M.  (See Ex. B).

90.     Therefore, Navigators acknowledgement that it owes a defense under the policy for Ms. O'Brien's retaliation lawsuit against Defendants disproves and waives any claim that Navigators does not owe a defense for retaliation claims brought by other plaintiffs in the Underlying Actions.  Yet, Navigators did not withdraw its coverage denial, at a minimum, for the retaliation claims brought by plaintiffs in the Underlying Action.

91.     Furthermore, Navigators has always had a duty to defend the lawsuits filed by underlying plaintiff, Marnie O'Brien, because the two complaints she filed against Defendants

did not include any reference to Tiffany Lee or any allegations related to Tiffany Lee's alleged claim against Defendants. Navigators had a duty to accept the defense of both actions in their entirety.  Navigators, however, accepted the defense only for the retaliation claims after first denying the claim.

92.     Even though Lisa Barbounis, one of the underlying plaintiffs, filed an amended complaint on August 24, 2020 against Defendants, which does not reference Tiffany Lee or include any allegations related to Tiffany Lee's alleged claim against Defendants, Navigators, without explanation, failed to update and correct its coverage denial with respect to that action. Navigators had a duty to revise its coverage decision and has a duty to provide a defense in that action.

93.     Furthermore, Navigators must provide a defense if any claims in the Underlying Actions are even potentially covered under the policy. Given that Navigators agrees that it must provide a defense for retaliation claims, then it must defend Defendants for the Underlying Actions in their entirety. Again, Navigators refuses to withdraw its coverage denial and refuses to provide a defense for the Underlying Actions consistent with its duty and obligation under the Navigators Policy, even for claims for which it has already acknowledged it has duty to defend.

94.     Navigators also has taken inconsistent positions with respect to who is an insured under the policy. In the denial letter, Navigators claimed that only Pipes and Roman are insureds, but not Bennett.  In the reservation of rights letters, Navigators acknowledged that Pipes, Roman, and Bennett are all insured persons under the policy

95.     Navigators acted in bad faith toward Defendants in violation of 42 Pa. C.S. §8371 by: (a) failing to fully and fairly investigate the claim; (b) failing to advise Defendants of a potential coverage defense when it had all the necessary information available to evaluate that

potential defense; (c) accepting the defense of the Underlying Actions thereby lulling Defendants into believing they had coverage; (d) allowing Defendants to continue to reasonably rely on Navigators' providing of a defense for months before finally denying coverage to Defendants' detriment because Defendants incurred substantial defense costs and did not notify their prior insurer, Federal, believing Navigators was providing coverage; (e) providing inconsistent coverage positions with respect to the claims asserted in the Underlying Actions and who qualifies as an insured under the policy; (f) refusing to pay defense costs across the board for retaliation claims, for which Navigators agreed it had a duty to defend; and (g) refusing to withdraw, correct, and update its coverage denial based on its own inconsistent coverage positions.

96.     Defendants believe that Navigators engaged in additional acts of bad faith and reserve their right to amend this count as the facts develop during discovery.

WHEREFORE, Defendants request that this Court enter judgment in its favor and against Navigators under 42 Pa. C.S. §8371 and Pennsylvania common law in an amount in excess of $150,000 for punitive damages, consequential damages, interest, attorneys' fees, costs, and any further relief this Court deems just, equitable, and proper.

## THIRD PARTY COMPLAINT

Defendants/Third Party Plaintiffs, The Middle East Forum, Daniel Pipes, Gregg Roman, and Matthew Bennett (collectively referred to as "MEF"), hereby file this Third Party Complaint against Third Party Defendant, Federal Insurance Company, and in support thereof, alleges as follows:

## THE PARTIES

1.      The Middle East Forum is a non-profit corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business located in Philadelphia, Pennsylvania. MEF conducts business in Pennsylvania and within the geographical boundaries of the Eastern District of Pennsylvania.

2.      Daniel Pipes is a citizen of Pennsylvania.

3.      Gregg Roman is a citizen of Pennsylvania.

4.      Upon information and belief, Matthew Bennett is a citizen of New Jersey.

5.      Upon information and belief, Federal Insurance Company is an insurance company formed under the laws of the State of Indiana with its principal place of business located in Warren, New Jersey.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000 exclusive of costs and interest, and the parties are citizens of different states.

7.      Venue is proper in the Eastern District pursuant to 28 U.S.C. §1391 as the case concerns a dispute that arose in this district and MEF's principal place of business is located within, and MEF conducts business in, this district.

## FACTUAL BACKGROUND

8.      The Middle East Forum is a Philadelphia based non-profit think tank, founded in 1994 by Daniel Pipes ("Pipes"), which promotes American interests in the Middle East and protects Western values from Middle Eastern threats. Pipes serves as MEF's President.

9.      Gregg Roman ("Roman") functions as MEF's Chief Operations Officer, responsible for day-to-day management, communications, and financial resource development.

10.     In 2019, five former, female MEF employees (Lisa Barbounis, Patricia McNulty, Catriona Brady, Delaney Yonchek, and Marnie O'Brien) filed various EEOC Complaints and lawsuits against MEF, Pipes, and Roman alleging various causes of action, including, gender discrimination, hostile work environment, disparate treatment, employment retaliation, assault and battery, and negligent hiring, supervision and retention. Some of lawsuits also include Matthew Bennett ("Bennett"), a former MEF employee, as a plaintiff.

11.     The acts and claims alleged in the Underlying Actions primarily are based on Roman's alleged conduct that supposedly occurred in late 2017, 2018, and into 2019. For ease of reference, MEF refers to Exhibits A through M of Plaintiff's Complaint which represent the lawsuits filed by the former MEF employees (the EEOC complaints and lawsuits are collectively referred to herein as the "Underlying Actions").

12.     MEF denies that any workplace sexual harassment, discrimination and/or retaliation, or negligent hiring and/or supervision, of any kind occurred involving Pipes, Roman, Bennett or any other MEF employee at any time.

13.     MEF tendered the claims and lawsuits to Navigators Insurance Company ("Navigators"), its insurer during the period when the employment practices claims set forth in the Underlying Actions were first made, for coverage under Policy No. NY18DOLV03594NV, the Not-For-Profit InNAVation Policy ("Navigators Policy"), effective December 23, 2018, through December 23, 2019.  That policy is a claims-made and reported policy, which includes Employment Practice Liability coverage.  (*See* Exhibit A attached to the Counterclaims against Navigators).

14.     The Navigators Policy provides a $3,000,000 limit of liability for employment practices claims and a $3,000,000 aggregate limit. Each claim under the Employment Practice Liability Coverage Part is subject to a $5,000 retention. Under the claims-made policy, Navigators is required to provide defense and indemnity for covered "Claims" made and reported to Navigators during the policy period. (*Id*.)

15.     MEF contends that coverage is provided under the Navigators Policy for the acts and claims alleged in the Underlying Actions.

16.     MEF contends that each of the Underlying Actions constitutes a "Claim" under the Employment Practices Coverage Part of the Navigators Policy, as the lawsuits are civil proceedings brought by present or past employees against the insureds, MEF, Roman, Pipes, and Bennett, for a "Wrongful Act," which includes alleged wrongful discharge, retaliation, sexual or other alleged workplace harassment, hostile work environment, Title VII claims, and the alleged failure of MEF, the insured, to provide for or enforce employment-related policies.  (*Id*.)

17.     MEF further contends that no exclusions or limitations in the Navigators Policy preclude coverage for the acts or claims alleged in the Underlying Actions, including policy exclusions, limitations, or endorsements, or common law defenses, that Navigators alleged in its Complaint, in the coverage denial letters, and/or otherwise asserted under the policy or at law.

18.     Navigators denied coverage for the Underlying Actions based on, *inter alia*, its position that the acts alleged in the Underlying Actions constitute wrongful employment practices acts related or interrelated to a claim made by Tiffany Lee, a former MEF employee, back in 2017.  (*See* Ex. H attached to the Counterclaims against Navigators).

19.     According to Navigators, the acts alleged in the Underlying Actions are not claims first made within its policy period because (a) those acts are related or interrelated to acts

alleged by Tiffany Lee, and relate back to the Lee claim, which allegedly occurred in 2017; and (b) the Lee claim was submitted to another insurer, Federal Insurance Company ("Federal").[4] (*Id*.)

20.    Federal insured MEF for the policy period of December 23, 2016 to December 23, 2017, for, *inter alia*, Employment Practices Liability Coverage, during which the alleged Tiffany Lee claim was made to MEF and when MEF reported that claim to Federal.  Although MEF reported the Lee claim to Federal in 2017, Lee dropped her claim and nothing further ever occurred.

21.    MEF believes that Navigators' position is wrong – the acts alleged in the Underlying Actions are not related to Tiffany Lee's claim, and, thus, coverage is provided under the Navigators Policy for the Underlying Actions.

22.    The acts and claims alleged in the Underlying Actions are materially different legally and factually in time, scope, and nature from Tiffany Lee's claim, and do not relate back or relate in any way to the Lee matter to preclude coverage under the Navigators Policy.

23.    If the acts alleged in the Underlying Actions do not relate back to the Tiffany Lee claim, then the Navigators Policy must provide coverage; if, however, the Court finds in favor of Navigators and holds that the acts alleged in Underlying Actions are related or interrelated acts to, or relate back to, the Tiffany Lee claim, then the Federal policy must provide coverage.

24.    Federal issued Policy No. 8237-7061 to MEF for the policy period of December 23, 2016 to December 23, 2017 ("Federal Policy"). (The Federal Policy is attached hereto as Exhibit J).

---

[4] Although Navigators refers to the Tiffany Lee claim as being submitted to "Chubb," Federal Insurance Company was the insurance company that issued MEF's prior policy.

25.    The Federal Policy's Declarations pages provide as follows, in pertinent part:

**THE DIRECTORS AND OFFICERS LIABILITY AND ENTITY LIABILITY, FIDUCIARY LIABILITY AND EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTIONS (WHICHEVER ARE PURCHASED) PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR DURING AN APPLICABLE EXTENDED REPORTING PERIOD.**

(*Id.*) (Emphasis in original)

26.    The Federal Policy's Employment Practices Liability Coverage Section insuring

agreement states, in pertinent part:

The Company shall pay, on behalf of the **Insureds, Loss** on account of any **Employment Claim** first made against such **Insureds** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for **Employment Practices Wrongful Acts**, but only if such **Employment Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 6 of the General Terms and Conditions Section of this Policy.

(*Id.*)

27.    Subsection 6 of the General Terms and Conditions in the Federal Policy provides,

in pertinent part:

(a) The **Insureds** shall, as a condition precedent to exercising any right to coverage under any **Liability Coverage Section**, give the Company written notice of any **Claim** as soon as practicable, but:

(1)    if such **Liability Coverage Section** expires (or is otherwise terminated) without being renewed and if no Extended Reporting Period is purchased with respect to such **Liability Coverage Section**, no later than the sixtieth (60th) day after the effective date of the expiration or termination; or

(2)    if an Extended Reporting Period is purchased with respect to such **Liability Coverage Section**, no later than the last day of the Extended Reporting Period.

(*Id.*)

28.    The Employment Practices Liability Coverage Section in the Federal Policy also

provides:

> All **Claims** arising out of the same **Wrongful Act** and all **Interrelated**
> **Wrongful Acts** shall be deemed one **Claim,** regardless of the number of
> **Claims** made, claimants, or **Insureds** against whom such **Claims** are made.
> Such **Claims** shall be treated as a single **Claim** first made on the date the
> earliest of such **Claims** was first made, or on the date the earliest of such
> **Claims** is treated as having been made in accordance with Subsection 6 of the
> General Terms and Conditions, regardless of whether such date is before or
> during the **Policy Period**.

(*Id.*)

29.    The Federal Policy also provides certain definitions for terms used in the policy,

including the following:

- **Interrelated Wrongful Acts** mean any causally connected **Wrongful**
  **Acts.**

- **Wrongful Act** means an **Employment Practices Wrongful Act**....

- **Employment Practices Wrongful Act** includes **Employment**
  **Discrimination, Employment Harassment, Retaliation, Wrongful**
  **Employment Decision,** and **Wrongful Termination** committed by an
  **Organization** or **Insured Person.**

(*Id.*)

30.    Therefore, the Federal Policy provides coverage for employment claims first

made against an insured during the policy period, provided the insured gives written notice of the

claim no later than 60 days after the policy expiration. (*Id.*) Tiffany Lee's claim occurred during

the Federal policy period and MEF provided notice to Federal prior to the expiration of the

policy.

31.     The Federal Policy further states that all claims arising out of the same wrongful acts or interrelated wrongful acts are deemed to be one claim, and that single claim shall be treated as first made on the earliest date that any such claim was first made. (*Id.*)

32.     If this Court determines, as Navigators claims, that the acts and claims alleged in the Underlying Actions are related or interrelated acts to Tiffany Lee's claim, then, under the Federal Policy, those related or interrelated acts are deemed to be one claim. Thus, under the Federal Policy, the Underlying Actions and Tiffany Lee's claim would be deemed to be one claim, first made on the date that the earliest of such claims was made – here that would be in 2017 when MEF first reported Tiffany Lee's claim to Federal during the Federal policy period.

33.     Federal denied coverage for the Underlying Actions on October 12, 2020. (*See* Ex. I attached to the Counterclaims against Navigators).

34.     MEF had no gaps in its Employment Practices Liability coverage for the years of 2016 through 2020. Either Navigators or Federal provides coverage to MEF for the Underlying Actions.

## COUNT I – BREACH OF THE INSURANCE CONTRACT

35.     Paragraphs 1 – 34 of the Third Party Complaint, the Counterclaims, the Answer to the Complaint, and the Affirmative Defenses are incorporated by reference.

36.     MEF and Federal entered into a valid claims-made insurance contract which was in full force and effect at the time that Defendants provided notice of the Tiffany Lee claim to Federal.

37.      If Navigators is correct and the court finds that the Underlying Actions relate back to Tiffany Lee's claim, then, under the Federal Policy, the Underlying Actions and the Lee claim are treated as a single claim first made on the date the earliest of such claims first made;

here, the earliest claim was Tiffany Lee's claim made and reported to Federal in 2017, during the Federal policy period.

38.     No exclusions or limitations in the Federal Policy preclude coverage for the Underlying Actions, including policy exclusions, limitations, or endorsements, or common law defenses, that Federal alleged in its coverage denial letter and/or otherwise asserted under the policy or at law.

39.     All conditions precedent to coverage have been fulfilled.

40.     Federal breached the insurance contract, including its duty to defend, when it denied coverage for the acts and claims alleged in the Underlying Actions on October 12, 2020.

41.     As a direct and proximate result of Federal's breach of the insurance contract, MEF has sustained and will continue to sustain damages in defense costs that it had to pay and will continue pay to defend all Defendants, and for any amounts MEF pays by way of settlements or judgments, in the Underlying Actions.

WHEREFORE, MEF respectfully requests that this Court enter judgment in its favor and against Federal in an amount in excess of $150,000 for all compensatory damages, consequential damages, interest, attorneys' fees, costs, and any further relief this Court deems just, equitable, and proper.

Dated: January 11, 2021

**OFFIT KURMAN, P.C.**

**By:**     */s Jay Levin*
Jay M. Levin
PA Attorney ID:  34561
jlevin@offitkurman.com
Madeline Caprioli Hamilton
PA Attorney ID: 69733

Madeline.hamilton@offitkurman.com
1801 Market Street, Suite 2300
Philadelphia, PA  19103
(267) 338-1300
*Attorneys for Defendants and Third Party*
*Plaintiffs, The Middle East Forum,*
*Daniel Pipes, Gregg Roman, and Matthew*
*Bennett*